UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | | |
|---|---|---|
| SAMUEL L. TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT BESSENT, Secretary of the Treasury, *et al.*,<br><br>Defendants. | ) | Civil Action No. 3:25-cv-586-CHB<br><br>**MEMORANDUM OPINION AND ORDER** |

*** *** *** ***

This matter is before the Court on the Motion to Dismiss, [R. 9], filed by Defendants Scott Bessent, in his official capacity as Secretary of the Treasury, and United States Mint at Fort Knox ("the U.S. Mint"). Plaintiff Samuel Taylor ("Taylor") responded, [R. 11], and Defendants replied, [R. 12]. The matter is fully briefed and is ripe for review. For the reasons that follow, the Court will grant Defendants' motion to dismiss.

## I. BACKGROUND

Taylor has been employed with the U.S. Mint for over thirteen years as a police officer at the United States Mint Bullion Depository. [R. 1, ¶ 1 (Complaint)]. Taylor is African American. *Id.* Every year, the U.S. Mint circulates sign-up sheets that offer additional opportunities to employees, including the chance to volunteer for the Mid-Year and End-of-Year Award Committees. *Id.* ¶¶ 12–13. Committee service provides valuable leadership experience, networking, and exposure to decision-makers. *Id.* ¶ 17. The Mid-Year and End-of-Year Award Committees are selected at the unilateral discretion of the U.S. Mint Field Chief, who allegedly did not provide an opportunity for African American employees, including Taylor, to volunteer. *Id.* ¶ 14. Taylor alleges that historically, no African American men have served on the award

committees or been recipients of awards. *Id.* ¶ 15. By contrast, Taylor alleges that the committee members and award recipients have been mostly White employees. *Id.* ¶ 16.

Taylor was not selected for either awards committee and alleges that he was denied those opportunities on the basis of race and color. *Id.* ¶ 18. He filed an EEO class complaint in May 2024, claiming exclusion of African American and Black employees from awards and committees, but the EEOC Administrative Judge dismissed the class for lack of numerosity. *Id.* ¶¶ 19–20. The Agency processed Taylor's EEO claim as an individual complaint and dismissed the individual complaint for failure to state a claim, reasoning that Taylor did not allege any personal harm because he was not nominated for an award or denied committee service. *Id.* ¶¶ 20–21. Taylor filed an EEOC appeal, and the EEOC's Office of Federal Operations affirmed the dismissal on June 12, 2025, concluding that Taylor had only raised a "generalized grievance." *Id.* ¶ 22.

Taylor then commenced this action, asserting Title VII claims of disparate treatment (Count I) and disparate impact (Count II) against Defendants Scott Bessent, in his official capacity as Secretary of the Treasury, and the U.S. Mint (collectively, "Defendants"). *Id.* ¶¶ 23–28. Defendants have moved to dismiss the Complaint in its entirety for failure to allege sufficient facts to bring a claim under Title VII. [R. 9, p. 1].

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal for "failure to state a claim upon which relief may be granted." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" if the factual allegations in the complaint "allow the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Further, "[t]he complaint is viewed in the light most favorable to [Plaintiff], the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [Plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

## III. ANALYSIS

### A. Disparate Treatment Claim

In Count I, Taylor asserts a claim for disparate treatment under Title VII, alleging that the U.S. Mint "intentionally discriminated against [him] because of his race and color by excluding him from Mid-Year and EOY Award Committees, thereby denying him career opportunities and recognition awarded to similarly situated White employees." [R. 1, ¶ 24]. Defendants contend that dismissal is proper on Taylor's disparate treatment claim because Taylor never alleges that he requested to be on a committee or that he was nominated for an award he did not ultimately receive. [R. 9-1, pp. 5–6]. In response, Taylor argues that at the pleading stage, he is not required to

demonstrate that he requested to be on a committee or that he was individually nominated for an award. [R. 11, p. 1].

To establish a prima facie case of disparate treatment, the plaintiff must show that "(1) [the plaintiff] was a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for his position, and (4) was replaced by someone outside the protected class or was treated differently from similarly situated members of the unprotected class." *Donaldson v. DeJoy*, No. 22-1651, 2024 WL 3493870, at *2 (6th Cir. May 1, 2024) (citing *Blount v. Stanley Eng'g Fastening*, 55 F.4th 504, 510 (6th Cir. 2022)). While it is true that at the pleading stage, Taylor is not required to plead facts that establish the elements of a prima facie case of disparate treatment, *see Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002), "those elements are not irrelevant." *Ivy v. Bessent*, 3:25-cv-00587-GNS, 2026 WL 2790302, at *2 (W.D. Ky. Sept. 17, 2026). "Under the ordinary pleading rules a complaint must still contain either direct or indirect allegations of the material elements of the alleged causes of action to show that a defendant is liable for the alleged misconduct." *Downs v. U.S. Postal Serv.*, No. 3:19-CV-00057-RGJ, 2019 WL 3947921, at *3 (W.D. Ky. Aug. 21, 2019).

Moreover, at the pleading stage, Taylor is required to "plead facts that allow the Court to draw the reasonable inference that [the U.S. Mint] is liable for the misconduct alleged in his race discrimination claims." *Washington v. Sodecia Auto.*, No. 25-1362, 2025 WL 2965835, at *2 (6th Cir. Oct. 21, 2025) (citation omitted). To survive Defendants' motion to dismiss, Taylor "must [have] allege[d] sufficient facts to allow the court to plausibly infer that [the U.S. Mint] discriminated against him because of his race." *Id.*

Here, Taylor has not alleged sufficient facts to allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 556). This Court's decision in *Ivy v. Bessent* is instructive. *Ivy v. Bessent*, 3:25-cv-00587-GNS, 2026 WL 2790302, at *2 (W.D. Ky. Sept. 17, 2026). In *Ivy*, this Court considered a disparate treatment claim nearly identical to Taylor's.[1] Similarly to Taylor, Ivy, the plaintiff, was an African American male employed with the U.S. Mint. *See id.* at *1. As in Taylor's complaint, Ivy's complaint alleged that the U.S. Mint intentionally discriminated against him due to his exclusion from certain awards committees. *Id.* at *2. However, Ivy did not allege "that he expressed any interest in [the award committees], that he volunteered to participate on one of the committees, or that he was even qualified for participation on a committee. He also [did] not assert he was directly turned away from participation or dissuaded from volunteering." *Id.* Taylor's complaint suffers from the same deficiencies, *see* [R. 1, ¶¶ 10–25], and, as in *Ivy*, "[t]his gap in alleged facts," *Ivy*, 2026 WL 2790302, at *2, does not "allow the [C]ourt to plausibly infer that [the U.S. Mint] discriminated against him because of his race." *Sodecia Auto.*, 2025 WL 2965835, at *2.

Taylor's argument that he "was not required to plead that he formally requested access to an opportunity that, by the terms of the Complaint, was never opened to him" is unavailing. [R. 11, p. 7]. According to Taylor, because "the Field Chief unilaterally selected the committee members" (and there was no open application process), he could not have expressed interest in volunteering for the committees. *Id.* However, Taylor's complaint belies this assertion. His complaint alleges that "[e]ach year, the Agency circulates sign-up sheets for collateral duties. These sheets allow employes to volunteer for committees and collateral assignments that provide exposure, networking, and professional development opportunities." [R. 1, ¶ 12]. Taylor's

[1] Both the complaint in *Ivy* and the complaint in this case were filed on September 10, 2025. *Compare* [R. 1], *with* Compl., *Ivy v. Bessent*, No. 3:25-cv-00587-GNS (W.D. Ky. 9/10/2025). The complaints contain identical language in Counts I and II. *Compare* [R. 1, ¶¶ 23–28], *with* Compl. ¶¶ 23–28, *Ivy v. Bessent*, No. 3:25-cv-00587-GNS (W.D. Ky. 9/10/2025). Both plaintiffs are represented by the same counsel, Mike Moulton of Moulton & Long PLLC.

complaint jumps straight from describing the committee sign-up process, [R, 1, ¶ 10], to the bald assertion that he and other African American men "were systematically excluded from the Mid-Year and End-of-Year Award Committees." *Id.* ¶ 13.

Though Taylor alleges that "the Field Chief unilaterally selected committee members without providing an opportunity for African American employees, including Plaintiff, to volunteer," *id.* ¶ 14, Taylor provides no facts to demonstrate that the unilateral selection method deprived him of the opportunity to volunteer in the first place. He does not allege that he "never received a sign-up sheet, that he was discouraged from signing up, that he expressed interest in signing up, or that he did in fact sign up for committee participation and was rejected." *Ivy*, 2026 WL 2790302, at *3; *see also* [R. 1, ¶¶ 10–22, 23–25]. Taylor's allegations related to the selection process, without additional facts, are "nothing more than [] unsupported conclusory statement[s][,] and 'such naked assertions add nothing to the complaint's sufficiency.'" *Ivy*, 2026 WL 2790302, at *3 (quoting *White v. Coventry Health & Life Ins. Co.*, 680 F. App'x 410, 415–16 (6th Cir. 2017)). Rule 8's pleading requirement "asks for more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678. (citing *Twombly*, 550 U.S. at 556), but here, Taylor has not included facts from which the Court could infer that his exclusion from the awards committees related to his race or color. *See White*, 680 F. App'x at 415.

Moreover, as discussed above, "even though [Taylor] is not required to plead facts alleging each of the prima facie elements [of a disparate treatment claim]," *Ivy*, 2026 WL 2790302, at *3, the pleadings "must still contain either direct or indirect allegations of the material elements of the alleged causes of action to show that a defendant is liable for the alleged misconduct." *Downs*, 2019 WL 3947921, at *3. One of the prima facie elements of a disparate treatment claim is that the plaintiff is "qualified for his position." *Donaldson*, 2024 WL 3493870, at *2 (citing *Blount*, 55

F.4th at 510). Taylor's complaint contains no direct or indirect allegations that he was "partially or fully qualified for either committee membership or award nomination and receipt." *Ivy*, 2026 WL 2790302, at *3. Taylor has "failed to allege any qualifications which make him more suitable for either a committee position or for receipt of an award than the White individuals who received those honors." *Id.* "'Us[ing] the prima facie elements as guideposts[,]' [Taylor] has thus failed to allege a plausible claim for relief" on his disparate treatment claim. *Id.* (citing *Downs*, 2019 WL 3947921, at *3).

**B. Disparate Impact Claim**

In Count II, Taylor asserts a claim for disparate impact under Title VII, alleging that the U.S. Mint's "practice of allowing the discretionary committee selection process conducted solely by the Field Chief without transparent criteria [] had a disparate impact on African American men, who were never selected for service." [R. 1, ¶ 27]. Defendants argue that Taylor's disparate impact claim should be dismissed because Taylor "fails to allege factual content directed at disparate impact liability." [R. 9-1, p. 8]. In response, Taylor contends that he has pled sufficient facts to survive the pleading stage on this claim because his complaint "challenges a concrete selection process and alleges a concrete historical disparity in who obtained committee service and its associated benefits." [R. 11, p. 8].

As with Taylor's disparate treatment claim, the Western District of Kentucky's decision in *Ivy* is instructive on Taylor's disparate impact claim. In analyzing Ivy's disparate impact claim, Judge Stivers walked through the relevant case law on disparate impact in the employment context, *see Ivy*, 2026 WL 2790302, at *3, which the Court will now briefly recount here. "Disparate impact results from facially neutral employment practices that have a disproportionately negative effect on certain protected groups and which cannot be justified as business necessity." *Waldon v.*

*Cincinnati Pub. Schs.*, 941 F. Supp. 2d 884, 888 (S.D. Ohio 2013) (citation omitted). "Generally[,] disparate impact analysis is used in a class action, but it may also form the basis of an individual claim." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 576 (6th Cir. 2004) (citation omitted). If an individual plaintiff brings a disparate impact claim, he "must show that the challenged policy directly disadvantaged him in some fashion." *Id.* at 577 (citation omitted).

"To establish a prima facie case of discrimination on a disparate-impact theory, a plaintiff must 1) identify a specific employment practice to be challenged and 2) prove through relevant statistical analysis that the challenged practice has an adverse impact on a protected group." *Taylor v. Ingham Cty. Circuit Court*, No. 23-1685, 2024 WL 3217590, at *9 (6th Cir. June 27, 2024) (quoting *Tartt v. Wilson Cty.*, 592 F. App'x 441, 447 (6th Cir. 2014)); *see also Davis v. Cintas Corp.*, 717 F.3d 476, 494 (6th Cir. 2013). Similarly to plaintiffs with a claim of disparate treatment, a plaintiff with a claim of disparate impact need not establish a prima facie case of disparate impact. *Ivy*, 2026 WL 2790302, at *3 (citing *Lyman v. Montclair at Partridge Creek, LLC*, No. 23-CV-10131, 2023 WL 6096678, at *5 (E.D. Mich. Sep. 18, 2023)). However, "[a] party alleging a disparate-impact theory must [still] allege a specific employment practice in the complaint." *E.E.O.C. v. Peoplemark, Inc.*, 732 F.3d 584, 591 (6th Cir. 2013) (citation omitted).

In *Ivy*, the "specific employment practice which Ivy ha[d] identified as problematic [was] the discretionary selection process of awards committee members overseen by a single field chief," which Ivy alleged had "resulted in no African American men having historically served on the awards committees and no African American men having received awards despite repeated nominations." *Ivy*, 2026 WL 2790302, at *4. Although the court acknowledged that "this type of discretionary employment practice is proper for analysis under a disparate impact theory," the court ultimately found that Ivy's allegations were insufficient to establish a disparate impact claim.

*Id.* The court reasoned that even taking Ivy's allegations as true, "[his] disparate impact claim suffer[ed] from the same problem as his disparate treatment claim: a lack of connection between the alleged discriminatory process and the alleged injury." *Id.* The court reiterated that Ivy had not alleged "that he signed up to be part of an awards committee, that he was interested in or expressed any interest in being part of a committee, or that he was prevented or discouraged from being part of a committee of which he wished to be a member." *Id.* Accordingly, "the fact that the discretionary selection policy may or may not have a disparate impact on African American men did not personally injure him." *Id.*

So too here. Taylor, who brings a disparate impact claim identical to Ivy's, has not alleged "that he signed up to be part of an awards committee, that he was interested in or expressed any interest in being part of a committee, or that he was prevented or discouraged from being part of a committee of which he wished to be a member." *Id.*; *see also* [R. 1, ¶¶ 10–22, 26–28]. Even assuming, as Taylor argues in his response, [R. 11, p. 8], that the discretionary selection process Taylor identified as problematic constitutes a "specific employment practice," as required at the pleading stage for a disparate impact claim, Taylor has not alleged any facts that demonstrate that the policy impacted him personally. As in *Ivy*, Taylor's disparate impact claim suffers from the same problem as his disparate treatment claim: "a lack of connection between the alleged discriminatory process and the alleged injury." *Ivy*, 2026 WL 2790302, at *4.

The Sixth Circuit's decision in *Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012), further illustrates the insufficiency of Taylor's allegations. In *Keys*, the Sixth Circuit held that the district court erroneously dismissed the plaintiff's individual claims of race discrimination. *Id.* at 610. The plaintiff in *Keys* alleged that the defendant had "a pattern or practice of discrimination" against African American mangers and professional staff." Her amended complaint "detail[ed] several

*specific* events . . . where [the plaintiff] allege[d] *she* was treated differently than her Caucasian management counterparts; it identifie[d] the key supervisors and other relevant persons by race and either name or company title; and it alleges that Keys and other African Americans received specific adverse employment actions notwithstanding satisfactory employment performances." *Id.* (emphasis added). The Sixth Circuit concluded that these allegations satisfied the pleading requirements of Rule 8. *Id.* In contrast, Taylor does not detail any "*specific*" occasions where *he himself* was discriminated against and not selected for service. *Id.* (emphasis added); *see also* [R. 1, ¶¶ 10–28].

Taylor's general allegation that he was excluded from committee service, devoid of any factual support, *see* [R. 1, ¶¶ 24–25]; [R. 11, p. 6], does not rescue his pleadings from this defect. *See, e.g.*, *Qiu v. Bd. of Educ. of Nelson Cty., KY*, No. 24-5305, 2024 WL 5423692, at *2 (6th Cir. Oct. 11, 2024) (affirming 12(b)(6) dismissal where the plaintiff "alleged generally, with no factual support, that the [defendant] did not hire her after hearing her accent"). At no point in the complaint does Taylor provide factual support for his conclusory assertion that he was "excluded" from committee participation. *See* [R. 1, ¶¶ 10–28]. Indeed, the allegations in the complaint indicate that what Taylor means by "excluded" is simply that he has not yet been selected for service on a committee. *See id.* However, as discussed several times throughout this opinion, Taylor does not allege that he sought or otherwise pursued committee service in any way. Thus, the pleadings contain no facts showing that Taylor's alleged exclusion resulted from, or was otherwise connected to, the discretionary selection process at issue in this case. *See Ivy*, 2026 WL 2790302, at *4. And Taylor's allegation related to the impact of the discretionary selection process on African American men in *general*, [R. 1, ¶ 27], is not sufficient to support his individual disparate impact claim. *See Ivy*, 2026 WL 2790302, at *4. Because Taylor did not allege facts that show a specific

occasion where the discretionary selection process at issue in this case impacted him personally, he has not plausibly stated a disparate impact claim. *See id.*

**C. Leave to Amend**

Finally, the Court addresses Taylor's informal request to amend his complaint. In his response to Defendants' motion to dismiss, Taylor states that "[i]f necessary, [he] can amend to allege additional facts already identified during the administrative process." [R. 11, p. 9]. However, Taylor did not explain the grounds on which he sought amendment, file a stand-alone motion, or attach a proposed amended complaint. *See id.* Taylor's underdeveloped "request in response to [Defendants'] motion to dismiss, *unaccompanied by a proposed amended complaint*, did not constitute a motion for leave to amend." *Glore v. RXC Acquisition Co.*, No. 3:18-cv-425-DJH, 2019 WL 13273128, at *2 (W.D. Ky. Sept. 18, 2019). The Sixth Circuit has made clear that "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought" is not a proper motion to amend. *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010). Granting a request for leave to amend in this case would allow Taylor to use the Court "as a sounding board to discover holes in [his] arguments, then reopen[] the case by amending [his] complaint to take account of the [C]ourt's decision." *Mich. Flyer LLC v. Wayne Cty. Airport Auth.*, 860 F.3d 425, 432 (6th Cir. 2017). Taylor is not "entitled to an advisory opinion informing [him] of the deficiencies in [his] complaint so that [he] could cure those deficiencies," *Glore*, 2019 WL 13273128, at *2, and his improper request to amend his complaint is denied.

## IV. CONCLUSION

For the above-stated reasons, the Court will grant Defendants' motions to dismiss and will dismiss all claims against all defendants in this matter. Accordingly, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. The Motion to Dismiss, **[R. 9]**, of Defendants Scott Bessent, in his official capacity as Secretary of the Treasury, and United States Mint at Fort Knox is **GRANTED**.
2. All claims against Defendants are **DISMISSED**.
3. The Clerk shall **STRIKE** this matter from the active docket.
4. A separate Judgment shall be entered contemporaneously with this Order.

This the 16th day of November, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY